IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

J.C., a minor, by and through his mother, )
LUISA FERNANDA SUTTON, )
                              Plaintiff, )
vs. ) Case No. CIV-18-197-M
LAVERNE PUBLIC SCHOOL DISTRICT, )
ISD No. 1, HARPER COUNTY, )
OKLAHOMA; KYNDRA ALLEN; )
EDDIE THOMAS; RICHARD WELLS; )
ANDY CUNNINGHAM, )
                            Defendants. )

## ORDER

Before the Court is plaintiff's Motion for Preliminary Injunction, filed March 13, 2018. On March 21, 2018, defendants filed their response, and on March 23, 2018, plaintiff filed his reply. On March 28 and 29, 2018, the Court held a hearing in this matter.

I.     Introduction[1]

J.C. is a ninth grade student at Laverne High School in Laverne, Oklahoma. The Laverne Public School District ("District") allows its middle and high school students to walk or drive off campus for lunch during the school day. On January 31, 2018, J.C. and another student left campus at their lunch break, picked up marijuana at the other student's house, drove to a country road, and smoked marijuana. J.C. and the other student were stopped by the Oklahoma Highway Patrol, and they were found to be in possession of marijuana and drug paraphernalia. The Oklahoma Highway Patrolman took J.C. home to his mother.[2]

---

[1] The facts contained in this Introduction are based upon the evidence presented during the hearing.
[2] English is a second language for J.C.'s mother. As was clear at the hearing, J.C.'s mother has some difficulty understanding English.

Though J.C. was not formally charged with a crime, the incident was reported to defendant Kyndra Allen ("Allen"), the principal at Laverne High School, around noon on January 31, 2018. That evening, Allen filled out the Laverne High School Suspension Procedures form ("Suspension Form"), stating that J.C. would be suspended for the rest of the semester. In the Suspension Form, Allen indicated that she had not considered any other options before deciding to suspend J.C. Allen also stated in the Suspension Form that J.C. had violated the Drug-Free Schools and Communities Policy.[3]

On the morning of February 1, 2018, J.C.'s mother, step-father, and J.C. went to Allen's office to find out whether J.C. would be returning to school. Allen advised J.C. and his parents that she could not meet with them at the time and that she would call them when she was ready to meet with them. J.C.'s step-father indicated that he had to go to work and would not be able to meet with Allen later. Allen stated that she could just talk to J.C.'s mother. Later that morning, Allen called J.C.'s mother and asked if they could return to the school.

J.C. and his mother came to Allen's office. During the meeting, Allen went over the Suspension Form. Allen imposed an out-of-school suspension of J.C. starting February 1, 2018 and ending May 18, 2018. During the meeting, J.C. did not dispute that he was smoking marijuana on the country road during his lunch break and that he was stopped by the Oklahoma Highway Patrol. It is disputed whether during the meeting, Allen, J.C., and his mother specifically discussed other potential options for discipline. Allen states they did; both J.C. and his mother state they did not. Allen informed J.C. and his mother of their right to appeal the decision to the Board of Education by making a request to the superintendent.

---

[3] The Drug-Free Schools and Communities Policy was the only policy listed that J.C. was alleged to have violated.

On February 2, 2018, Eddie Thomas ("Thomas"), the superintendent of Laverne Public Schools, was informed that J.C.'s parents were requesting an appeal of the suspension to the Board of Education. Thomas included the appeal on the agenda for the February 5th meeting and posted the agenda later that day. Subsequently, on the afternoon of February 5th, J.C.'s step-father came to the district's main office confirming that J.C. was appealing the suspension. Thomas asked J.C.'s step-father if he wished to have the meeting at the regular board meeting scheduled for that evening, and J.C.'s step-father responded that he would.

The Laverne Board of Education ("Board") convened for its regularly scheduled meeting on February 5, 2018 at 6:30 p.m. At approximately 7:10 p.m., the Board entered into executive session to conduct J.C.'s requested appeal hearing. Those present included three Board members: defendant Andy Cunningham, defendant Richard Wells, and Gabe Hope, as well as Thomas, Allen, J.C., his parents, and three witnesses to testify on J.C.'s behalf.[4] During the meeting, J.C. and his parents were given the opportunity to present evidence and witnesses, to question the administration, and to make arguments to the Board. J.C., his parents, and the three witnesses testified on J.C.'s behalf. Allen presented the basic facts to the Board and informed them of the length of the suspension. The only policy that was discussed during the executive session that J.C. was alleged to have violated was the Drug-Free Schools and Communities Policy.

After thirty minutes in executive session, the Board returned to regular session and adopted the following findings of fact: (1) Suspended student, was stopped by The Oklahoma Highway Patrol, during lunch break, and was found to have in his possession a Controlled Dangerous Substance and Drug Paraphernalia; (2) According to school policy this act is punishable by a

---

[4] The testimony at the hearing indicated that J.C. was not present for a portion of the executive session.

suspension of up to the current semester and the succeeding semester; (3) Student was suspended for the remainder of the current semester.[5] In a 2-1 vote, the Board upheld J.C.'s suspension.

On March 2, 2018, plaintiff filed the instant action pursuant to 42 U.S.C. § 1983, alleging that J.C.'s procedural and substantive due process rights have been violated. After the instant action was filed, Allen provided J.C. with an out-of-school education plan. Under that plan, J.C. will receive weekly coursework for his core subjects, and J.C. will receive up to 65% credit for any work done on the educational plan while suspended. Plaintiff now moves this Court, pursuant to Federal Rule of Civil Procedure 65(a), to enter a preliminary injunction directing defendants to permit J.C. to return to school during the pendency of this litigation.

II.   Discussion

A movant seeking a preliminary injunction must show: (1) a substantial likelihood of success on the merits; (2) irreparable injury to the movant if the injunction is denied; (3) the threatened injury to the movant outweighs the injury to the party opposing the preliminary injunction; and (4) the injunction would not be adverse to the public interest. *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 269 F.3d 1149, 1154 (10th Cir. 2001). "Because a preliminary injunction is an extraordinary remedy, the movant's right to relief must be clear and unequivocal." *Id.* (internal citation omitted). Whether to grant a preliminary injunction rests within the sound discretion of the trial court. *United States v. Power Eng'g Co.*, 191 F.3d 1224, 1230 (10th Cir. 1999).

If, however, a movant is seeking a disfavored preliminary injunction – preliminary injunctions that alter the status quo, mandatory preliminary injunctions, or preliminary injunctions

---

[5] The Board members did not prepare the findings of fact but were presented with the findings of fact by Thomas.

4

that afford the movant all the relief that he could recover at the conclusion of a full trial on the merits – the movant must satisfy a heightened burden. *See O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 975 (10th Cir. 2004). "[A]ny preliminary injunction fitting within one of the disfavored categories must be more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course." *Id.* at 975. Specifically, "a party seeking such an injunction must make a strong showing both with regard to the likelihood of success on the merits and with regard to the balance of harms". *Id.* at 976.

Defendants assert that plaintiff is seeking a disfavored injunction because the requested injunctive relief affords plaintiff all the relief that he could recover at the conclusion of a full trial on the merits. Having reviewed the parties' submissions, as well as having heard the evidence and arguments presented at the hearing, the Court finds that plaintiff is not seeking a disfavored injunction. Specifically, the Court finds that plaintiff is simply seeking J.C.'s temporary reinstatement in school during the pendency of this litigation; if defendants ultimately prevail on the merits of this litigation, they would be free to re-apply the remainder of J.C.'s suspension during the subsequent semester. Further, plaintiff's Complaint seeks additional relief, including (1) that defendants be permanently enjoined from applying J.C.'s suspension, (2) that J.C.'s academic record be revised to remove any indication of his suspension, and (3) that he be awarded monetary relief for his suspension from school. Therefore, the Court finds that the traditional preliminary injunction standard applies in this case.

A. Substantial likelihood of success on the merits

In this case, plaintiff asserts both a procedural due process claim and a substantive due process claim.[6] The Supreme Court has held that "a student's legitimate entitlement to a public education [is] a property interest which is protected by the Due Process Clause". *Goss v. Lopez*, 419 U.S. 565, 574 (1975).

> The Due Process Clause not only provides a procedural safeguard against deprivations of life, liberty, and property but also protects substantive aspects of those interests from unconstitutional restrictions by government. . . . [A court] will uphold a school's decision to suspend a student in the face of a substantive due process challenge if the decision is not arbitrary, lacking a rational basis, or shocking to the conscience of federal judges.

*Butler v. Rio Rancho Pub. Sch. Bd. of Educ.*, 341 F.3d 1197, 1200-01 (10th Cir. 2003) (internal quotations and citations omitted). Further, "it [is] a violation of due process to convict and punish a man without evidence of his guilt." *Thompson v. City of Louisville*, 362 U.S. 199, 206 (1960). Thus, it would be a violation of a student's substantive due process rights if he is suspended for violating a school policy without any evidence that he, in fact, violated that policy.

In the case at bar, both the initial decision to suspend J.C. and the Board's decision to uphold J.C.'s suspension were based upon J.C.'s alleged violation of the Drug-Free Schools and Communities Policy. That policy provides, in pertinent part:

> The unlawful use, possession, dispensing, distribution, manufacture, or possession with intent to distribute, of an illicit drug, including alcoholic beverage, <u>in any of the Laverne School District's facilities, on any of the Laverne School District property (including vehicles), or at any School District sponsored function or event</u>, is strictly prohibited.

---

[6] Because this Court finds that plaintiff has shown a substantial likelihood of success on the merits for his substantive due process claim, the Court declines to address the likelihood of success in relation to plaintiff's procedural due process claim.

Student Handbook at 16 (emphasis added).  Having carefully reviewed the parties' submissions, and having heard the evidence presented at the hearing, the Court finds that plaintiff has shown that there is no evidence that J.C. used or possessed marijuana in any of the District's facilities, on any of the District's property, or at any District sponsored function or event.  Further, the Court finds that without the above evidence, J.C. could not have violated the Drug-Free Schools and Communities Policy.  Additionally, the Court finds that without said evidence, there can be no rational basis for J.C.'s suspension.

Accordingly, the Court finds that plaintiff has shown a substantial likelihood of success on the merits of his substantive due process claim.

### B.  Irreparable injury

"A plaintiff suffers irreparable injury when the court would be unable to grant an effective monetary remedy after a full trial because such damages would be inadequate or difficult to ascertain."  *Dominion Video*, 269 F.3d at 1156.

> Determining whether irreparable harm exists can be a difficult and close question.  We have noted that [t]he concept of irreparable harm . . . does not readily lend itself to definition, nor is it an easy burden to fulfill.  In defining the contours of irreparable harm, case law indicates that the injury must be both certain and great, and that it must not be merely serious or substantial.

*Id.* at 1262 (internal quotations and citations omitted).  Further, "[w]hen an alleged constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Kikumura v. Hurley*, 242 F.3d 950, 963 (10th Cir. 2001) (internal quotations and citation omitted).

Having carefully reviewed the parties' submissions, and having heard the evidence presented at the hearing, the Court finds that plaintiff has shown that he will suffer irreparable injury if his motion for preliminary injunction is denied.  First, any violation of J.C.'s due process rights would constitute irreparable injury.  Further, J.C.'s suspension would cause irreparable

7

injury to his educational opportunities, his reputation and standing in his school and community, and his opportunities to pursue college aspirations. Additionally, the 35% reduction to J.C.'s grades under the education plan provided to J.C. by the District would cause irreparable injury to J.C.

  C. <u>Balance of hardships</u>

At the hearing, defendants presented no evidence of any injury to the District if plaintiff's motion for preliminary injunction were granted. In fact, there was testimony that there was no threat to the other students or the functioning of the school if J.C. returned to school during the pendency of this litigation. Accordingly, the Court finds the threatened injury to J.C. outweighs any possible injury to defendants.

  D. <u>Public Interest</u>

Finally, the Court finds that plaintiff has shown that the preliminary injunction would not be adverse to the public interest. "[I]t is always in the public interest to prevent the violation of a party's constitutional rights". *Awad v. Ziriax*, 670 F.3d 1111, 1132 (10th Cir. 2012) (internal quotations and citations omitted). Thus, the protection of J.C.'s due process rights would be in the public interest.

## III. <u>Conclusion</u>

Accordingly, for the reasons set forth above, the Court GRANTS plaintiff's Motion for Preliminary Injunction [docket no. 5] and DIRECTS defendants to permit J.C. to return to school during the pendency of this litigation.

  **IT IS SO ORDERED this 5th day of April, 2018.**

*/s/ Vicki Miles-LaGrange*
VICKI MILES-LaGRANGE
UNITED STATES DISTRICT JUDGE